JOURNAL ENTRY and OPINION
Defendant-appellant Jeffrey Mader appeals his conviction on two counts of gross sexual imposition, one count of kidnapping (finding he released the victim in a safe place), and one count of corrupting another with drugs, with sexual motivation specification. For the reasons stated below, this matter is affirmed in part and reversed on the kidnapping conviction.
At the time of the incident, Mader was approximately nineteen years old. The victim, T[1] was thirteen years old. T's friend, C was a fourteen-year-old high school student. C knew Mader from high school, and had purchased marijuana from him in the past. T had seen Mader before, but did not know him well.
In September 1999, T and C were hanging out in the afternoon with other teens at the park located near Bay Pharmacy. Mader was also present in the group of teens. The girls returned to T's home, and around 8:00 p.m. returned to Bay Pharmacy. Mader approached the girls in front of the pharmacy and asked them if they wanted to smoke marijuana with him. The girls went with Mader to a semi-wooded area located behind the pharmacy where local teens hang out.
Mader and C smoked marijuana. C at first provided a statement to police in September 1999 which stated that T did not smoke marijuana, but later recanted, and in February 2000, provided a new statement to the police that stated that T did smoke marijuana. T denied she participated in the smoking.
Mader then asked C and T to kiss one another. The girls refused.
C fell asleep after smoking the marijuana. In her September statement, C testified that she woke up periodically and heard T saying no repeatedly, and then T abruptly woke C and the two left. In C's February statement, she said that T and Mader started to kiss before she went to sleep and that T encouraged Mader to kiss her. She also stated that when she awoke she saw T on top of Mader.
T testified that Mader was the aggressor and that he pinned her down while touching her breast and her pubic hair. T testified that as they left the scene Mader said, We will finish what we started later. She further testified that she believed this to be a threat and that she was frightened after the incident.
Based on his prior record, Mader was sentenced to one year on each count of gross sexual imposition, one year on corrupting a minor with drugs, and two years on the kidnapping charge, to run concurrently.
 I. MR. MADER WAS DENIED A FAIR TRIAL BY REASON OF IMPROPER ARGUMENTS BY THE PROSECUTING ATTORNEY DURING THE CASE, INCLUDING OPENING STATEMENT AND CLOSING ARGUMENT.
The prosecutor wrongfully made statements regarding the credibility of C's testimony. However, Mader cannot show that he was prejudiced by these statements.
In his closing argument, the prosecutor reiterated the defense counsel's argument that there may not have been marijuana present because the Bay Village police did not do a drug test. He stated the following, as if he was the defense attorney, We don't know if marijuana existed. Don't believe [C] with respect to that.
Further questioning C's credibility outright, the prosecutor said: Credibility? C? * * * Now she decides to change her tune and they want to talk about credibility.
However, C's credibility regarding whether T was the aggressor is undermined by the other witnesses who testified. T's mother's testimony and the testimony of T's school counselor corroborate T's story that the act was not voluntary. Even if their hearsay testimony is excluded, it is clear that T was still upset by the incident two days afterwards, which suggests that the encounter was involuntary.
The other alleged misconduct was that the prosecutor stated in his opening statement that the marijuana was laced with something. The defense objected and the court sustained the objection.
Also, in his closing argument, the prosecutor stated the following:
 I believe that the State has proven its case beyond a reasonable doubt.
 I believe in this case on September 11, 1999, it was Jeffrey Mader's intention to take advantage of both of these young ladies, getting them high . . .
Mader argues that by stating the above, the prosecutor wrongfully presented his personal beliefs to the jury.
As stated in State v. Carter (2000), 89 Ohio St.3d 593, 734 N.E.2d 345, where the prosecutor, among other acts, questioned the credibility of the expert witnesses:
 The test for prosecutorial misconduct is whether the remarks are improper and, if so, whether they prejudicially affected substantial rights of the accused. Even if improper, the verdict will not be overturned unless the defendant was actually prejudiced by the impropriety. State v. Lott (1990) 51 Ohio St.3d 160, 165, 555 N.E.2d 293, 300.
 See, also, State v. Smith (1984), 14 Ohio St.3d 13, 14-15, 14 Ohio B. Rep. 317, 318-319, 470 N.E.2d 883, 885-886. Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning.
 Donnelly v. DeChristoforo (1974), 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431, 439; State v. Hill (1996), 75 Ohio St.3d 195, 204, 661 N.E.2d 1068, 1078.
Even if the prosecutor's comments were improper, they did not deny Mader a fair trial. The comments during closing argument were isolated and tempered by other comments to the jury indicating that it was up to the jury to make the final determination as to the facts. Mader has failed to show that any actions by the prosecutor denied him a fair trial, and therefore the first assignment of error is overruled.
 II. MR. MADER WAS PREJUDICED WHEN THE TRIAL COURT PERMITTED, OVER TRIAL COUNSEL'S OBJECTION, LEADING QUESTIONS TO BE ASKED OF THE COMPLAINING WITNESS.
The prosecutor consistently led T through both superficial and material testimony. The defense objected at several points, and many objections were sustained. However, the defense's objection to the following line of questioning was overruled:
Q: Why couldn't you get up?
A: Because he was like over me.
Q: Explain that. * * *
 A: He was he would like move down more. I would try to scoot away and he would just move down more.
Q: Was his upper body ever touching your body?
A: Yes.
Q: Were you ever pinned Mr. Talikka: Objection.
Court: Overruled.
T then testified that she was pinned down by Mader.
Mader argues that he was prejudiced by these leading questions, because the issue of whether T was restrained was critical to the kidnapping charge.
Evid.R. 611(C) states in pertinent part:
 (C) Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony.
 Ordinarily leading questions should be permitted on cross-examination.
As stated in State v. Guy (Dec. 2, 1999), Cuyahoga App. No. 74457, unreported:
 [i]t is within the sound discretion of the judge to permit the state to ask leading questions of its own witnesses. State v. Miller (1988), 44 Ohio App.3d 42, 541 N.E.2d 105. See, also, State v. Madden (1984), 15 Ohio App.3d 130, 133, 472 N.E.2d 1126, 1130; State v. Smith (1977), 59 Ohio App.2d 194, 203, 392 N.E.2d 1264, 1270. The proviso "except as may be necessary to develop his testimony" is quite broad, and the judge must exercise his judgment as to where the limits must be drawn. Miller, supra. See, also, State v. Lewis (1982), 4 Ohio App.3d 275, 278, 448 N.E.2d 487, 490.
Based on this broad standard, the trial court did not err in permitting the leading questions, and the second assignment of error is therefore overruled.
 III. MR. MADER WAS PREJUDICED BY THE ADMISSION OF HEARSAY STATEMENTS THAT THE ALLEGED VICTIM TOLD THE POLICE AND OTHER ADULTS.
Mader contends the court erred by allowing hearsay testimony from T's mother, her school counselor, and the detective. The trial court permitted the testimony as an excited utterance.
Evid.R. 803 (a) provides in pertinent part that the hearsay rule does not exclude:
 a statement relating to a startling event or condition made while the declarant was under stress of excitement caused by the event or condition.
As stated by the dissent in State v. Kebe (Nov. 12, 1998), Cuyahoga App. No. 73398, unreported:
 The excited utterance exception allows for the admission of hearsay testimony if (1) the statement relates to a startling event, and (2) the statement is made under the stress of that event. Evid. R. 803(2), State v. Taylor (1993), 66 Ohio St.3d 295, 612 N.E.2d 316.
 The statement does not have to be made within a certain time after the event in order to be an excited utterance. See Taylor, supra, State v. Duncan (1978), 53 Ohio St.2d 215, 373 N.E.2d 1234. The question is whether the declarant was still under the stress of the event. Id.The trial court has wide discretion in determining whether the declarant was under the stress of the event when the out of court statement was made. State v. Fowler (1985), 27 Ohio App.3d 149, 151, 500 N.E.2d 390, Duncan, supra. A child is likely to remain in a state of nervous excitement longer than an adult. See Taylor, Boston, supra. A child also has less ability to reflect upon events, so their statements are less likely to be the result of reflective thought. See Id. A child could still be under the stress of the incident days or weeks after the event. See Boston, Fowler, supra.
Mader maintains that the hearsay statements that implicated him substantiated T's version of the incident. It is Mader's contention that had this testimony not been allowed, T's rendition of the incident which conflicted with C's testimony, would not have been sufficient to convict.
However, when the witnesses spoke to T two to three days after the incident, T was hysterical and crying. Further, T was thirteen years old at the time of the incident. Thus, it was within the trial judge's discretion to find that she was still under the stress of the event when she made the statements to the various adults. Thus, the court did not err in finding that the above statements were excited utterances.
Accordingly, the third assignment of error is not well taken.
 IV. MR. MADER WAS PREJUDICED WHEN THE TRIAL COURT PERMITTED A WITNESS FOR THE STATE TO BE CALLED AS A `COURT WITNESS' PERMITTING THE STATE TO CROSS-EXAMINE ITS OWN WITNESS.
The court explained on the record that it was calling C as a court witness because she changed her version of what happened and because there was a conflict or alleged inconsistency.
Evid.R. 614 provides for the calling and interrogation of witnesses by the court as follows:
 (A) Calling by Court. The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.
Mader argues that the action of the trial court permitted the State to cross-examine C in violation of Evid.R. 607.
As stated in State v. Dacons (1982), 5 Ohio App.3d 112:
 In State v. Adams (1980), 62 Ohio St.2d 151, upon request of the state, a witness was called as the court's witness because she had made statements in the past that were inconsistent and would be inconsistent with her expected trial testimony. The Court held that had the State called the witness, it would have been deemed to have vouched for her credibility and could not thereafter have impeached her. The court stated that the trial court had the power under common-law evidentiary rules to call witnesses in the exercise of sound discretion. The court rejected the argument of the defense that it would be unfair to permit the prosecution to gain the right to impeach the witness and to be able to ask leading questions of the witness. The Supreme Court found no abuse of discretion, as there was justification in that the [* * *9] witness' testimony would be beneficial to the jury in performing its fact-finding responsibilities.
In this case, the State made a motion to call C as the court's witness on the basis that her trial testimony was expected to be different than some of her pretrial statements. C was an important eyewitness whose testimony could reasonably be found to be necessary to aid the jury in responsibly carrying out its fact-finding function. The reason the State requested the court to call C as a witness, rather than calling her as a witness itself, was to avoid being unable to test the credibility of her testimony by her prior out-of-court statements, just as in Adams. This reason was articulated to the jury, as required. Thus, the trial court did not err in calling C as its witness. See, State v. Cummings (Oct. 17, 1996), Cuyahoga App. No. 69966, unreported; State v. Rhym (July 27, 1995), Cuyahoga App. No. 67750, unreported; Dacons, supra.
Therefore, the fourth assignment of error is overruled.
 V. THE TRIAL COURT ERRED IN ALLOWING THE STATE TO AMEND THE INDICTMENT WHICH PREJUDICED MR. MADER BY BEING PROSECUTED FOR CRIMES UPON EVIDENCE WHICH WAS NOT PRESENTED TO THE GRAND JURY.
The indictment was amended prior to the commencement of the trial. The kidnapping count is titled kidnapping and properly states the elements of kidnapping, but cites the wrong statute, R.C. 2925.02 instead of 2905.01.
"No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a grand jury * * *." Section 10, Article I, Ohio Constitution. "This provides an inalienable protection to the defendant that he will be tried on the same essential facts on which the grand jury found probable cause." State v. Vitale (1994), 96 Ohio App.3d 695, 699, 645 N.E.2d 1277; State v. Doss (Oct. 5, 2000), Cuyahoga App. No. 77233, unreported.
Pursuant to Crim.R. 7(D), the trial court has discretion to amend the indictment "provided no change is made in the name or identity of the crime charged." Where the amendment to an indictment requires proof of an essential factual element which the original indictment did not, "the amendment of the indictment change[s] the identity of the crime charged in contravention of Crim.R. 7(D)." Vitale, supra at 701, quoting State v. Woody (1986), 29 Ohio App.3d 364, 365,505 N.E.2d 646.
The risk presented by an amended indictment is that the defendant was convicted on evidence that was never presented to the grand jury. Vitale; Doss. Here, that risk does not exist because the evidence presented to the grand jury supported an indictment on a charge of kidnapping. This is evident as the language used in the body of the indictment sets forth the elements of R.C.2905.01, kidnapping not the elements of R.C. 2925.02, corrupting another with drugs. Therefore, it is clear that the change was necessary to correct a clerical error, unlike Doss where the prosecution failed to meet the elements of the original charge and amended the indictment to a crime where it could meet the essential elements; or Vitale where the date of the crime committed was changed. Clearly, those amendments were an attempt to convict the defendants on evidence that was never presented to the grand jury. That is not the matter at hand.
Thus, the amendment to the indictment did not change the identity of the crime with which appellant was charged and, therefore, appellant was convicted on a charge essentially the same as that found by the grand jury.
The fifth assignment of error is overruled.
 VI. THE TRIAL COURT ERRED IN CONVICTING AND SENTENCING MR. MADER ON BOTH THE COUNT OF KIDNAPPING AND THE COUNTS OF GROSS SEXUAL IMPOSITION IN VIOLATION OF R.C. 2941.25.
The indictment for the charge of gross sexual imposition reads as follows:
 had sexual contact with [T], not his spouse, by purposely compelling to submit by force or threat.
Mader contends that it is error for the court to convict him of both the offenses of gross sexual imposition and kidnapping where the offenses are allied offenses of similar import. Specifically, Mader argues that the evidence did not demonstrate that a kidnapping occurred independently of the gross sexual imposition. Mader's argument has merit.
R.C. 2941.25, provides that:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
Although Mader was convicted on the charge of gross sexual imposition, not rape, the cases analyzing rape and kidnapping are analogous to the case at hand because the gross sexual imposition with which Mader is charged required force or restraint. (Compare State v. Murphy (July 30, 1998), Cuyahoga App. No. 71775, unreported, which the State relies on, wherein the defendant was charged with gross sexual imposition involving a child under thirteen, which does not require force or restraint.)
A conviction for rape and kidnapping will be upheld when the restraint or movement of the victim is significantly independent of the rape, thus demonstrating a separate animus or purpose for each act. State v. Dunlap (Jan. 16, 1997), Cuyahoga App. No. 70427, unreported, construing R.C.2941.25; State v. Mitchell (1989), 60 Ohio App.3d 106, 108, 574 N.E.2d 573.
As this court stated in Dunlap:
 "[W]here an individual's immediate motive involves the commission of one offense, but in the course of committing that crime he must, a priori, commit another, then he may well possess but a single animus, and in that event may be convicted of only one crime." [State v. Logan (1979), 60 Ohio St.2d 126, 397 N.E.2d 1345]. The decision in Logan was based upon the determination of whether the restraint or movement of the victim (the kidnapping) was incidental to a separate underlying crime (the rape) or whether the kidnapping had significance independent of the other offense.
 Under the facts of Logan, the court found the kidnap merely incidental to the rape and reversed the kidnap conviction; hence, the kidnap had been merged into the rape.
Here, T voluntarily went with Mader behind the pharmacy. Further, the act of pinning her down was incident to Mader's attempt to touch T sexually. Thus, the facts of this case do not support a separate conviction for both gross sexual imposition and kidnapping, because the restraint was incidental to the gross sexual imposition. No evidence was presented to show that the restraint of liberty was significantly independent of the gross sexual imposition or lasted for a significant period of time. The restraint of T's liberty appears to have been solely for the purpose of committing gross sexual imposition. Upon reviewing Mader's conduct, we find no evidence demonstrating either that the crimes were committed separately or that there was a separate animus for each crime. Rather, the facts are analogous to Logan where the Ohio Supreme Court found the kidnap was merely incidental to the rape, and hence the kidnap had been merged into the rape. Accordingly, the sixth assignment of error is well taken, and the conviction for kidnapping is vacated.
 VII. MR. MADER'S CONVICTIONS FOR KIDNAPPING, GROSS SEXUAL IMPOSITION, AND CORRUPTION OF ANOTHER WITH DRUGS ARE AGAINST THE SUFFICIENCY AND/OR WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.
Sufficient evidence was presented on the corruption charge, as Mader provided C, a minor, with marijuana. Further, his intent was sexual in nature as he led the girls to a secluded area and made inappropriate sexual comments shortly after the smoking commenced. Evidence on each element of gross sexual imposition existed as T was not Mader's spouse and she provided a statement to the police which stated that Mader forced himself on her sexually. Further, the evidence to support the kidnapping charge existed because T alleged that she was physically restrained by Mader. Thus, the State had enough evidence on each element of the offenses in order to bring this matter to the jury. See State v. Jenks (1991), 61 Ohio St.3d 259. As such, Mader's challenge of the sufficiency of the evidence is without merit.
However, Mader argues that the State failed to prove essential elements of the gross sexual imposition and kidnapping charges because the State failed to show that T was restrained or removed, and that the sexual acts were not consented to by T. However, that question only arises if C's testimony is more credible than T's.
Resolving inconsistencies in the evidence and determining the credibility of the witnesses is primarily up to the fact finder, and the evidence must be viewed in the light most favorable to the prosecution. State v. DeHass (1967), 10 Ohio St.2d 230, 231. See, also, State v. Jenks (1991), 61 Ohio St.3d 259, 279. The jury found T more credible than C regarding whether T was restrained by Mader. Thus, viewing the conflict in the light most favorable to the prosecution, the gross sexual imposition conviction was not against the manifest weight of the evidence. However, as explained above, the kidnapping conviction was against the manifest weight.
The seventh assignment of error is sustained in part.
Judgment affirmed in part. Kidnapping conviction vacated and case remanded for resentencing.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's convictions having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, P.J., CONCURS; KENNETH A. ROCCO, J., CONCURS IN PART AND DISSENTS IN PART IN SEPARATE OPINION.
[1] To protect their privacy, the victims are referred to in this opinion by only the initials of their first names, pursuant to court policy.